Danny Newman, WSBA No. 61824
  Email: danny.newman@tonkon.com
  Direct: 503.802.2089
Ava Schoen, admitted *Pro Hac Vice*
  Email: ava.schoen@tonkon.com
  Direct: 503.802.2143
Christopher Pallanch, WSBA No. 45859
  Email: christopher.pallanch@tonkon.com
  Direct: 503.802.2104
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
  Main: 503.221.1440
  Facsimile: 503.274.8779
*Attorneys for Debtors*

**JUDGE FREDERICK P. CORBIT**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REFRESHING USA, LLC,<br><br>    Debtors[1].<br><br>In re<br><br>WATER STATION MANAGEMENT LLC, Creative Technologies, LLC, and Refreshing USA, LLC | Lead Case No. No. 24-01863-FPC11<br><br>(Jointly Administered)<br><br>Adversary No. 25-80017-FPC<br><br>**SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC** |

[1] Debtors and debtors-in-possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-01866-11. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 1

Plaintiffs[2],

v.

RIVERSIDE CAPITAL NY LLC,

Defendant.

Comes now Plaintiffs Water Station Management LLC ("Water Station"), Creative Technologies, LLC ("Creative") and Refreshing USA, LLC ("Refreshing"; and collectively "Plaintiffs") and allege the following causes of action:

## I. INTRODUCTION

1.1 Creative, a Washington limited liability company, was formed to manufacture, assemble, and sell water station vending machines that are (or were to be) placed around the country in convenience store and retail locations.

1.2 Water Station, a Washington limited liability company, was to manage and service the water machines manufactured by Creative.

1.3 Refreshing, a Washington limited liability company, previously operated a nationwide vending machine business, and was owned in part by Water Station and in part by Summit Management Services, LLC ("Summit Management"), and was the parent company of numerous subsidiaries that also owned and operated vending machine businesses within the United States.

---

[2] Debtor and debtor-in-possession in this Chapter 11 case, along with the last four digits of its Employer Identification Numbers, is Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-01864-11. This proceeding has been consolidated. The other entities are Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; and Creative Technologies, LLC (46-2581888) ("Creative"), Case No. 24-01866-11.

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 2

1.4 In effect, Plaintiffs' business structure was designed to allow investors to purchase water machines from Creative and Water Station through a variety of agreements and arrangements. Investors were then to receive a return of profits.

1.5 In reality, however, the earlier owners and managers of Plaintiffs—along with their various affiliates and related entities—were engaged in a Ponzi or Ponzi-like scheme. Specifically, water machines were not acquired to the degree represented under the various agreements, and returns were not generated or collected for the benefit of investors, such that no legitimate profit-making business existed. Instead, proceeds received from new investors and lenders were funneled to earlier investors, and new investor funds and loans (instead of legitimate business venture profits) were used to provide a return to earlier investors and to pay debts.

1.6 Between January and July 2023, Refreshing, Creative, and a number of non-party guarantors entered into two merchant cash advance agreements with Defendant Riverside Capital NY LLC ("Riverside Capital"). Water Station was not a party to or a guarantor of either merchant cash advance agreement.

1.7 The merchant cash advance agreements constituted the sale of future receivables, where Riverside Capital acquired the rights to receive a specified portion of Refreshing, Creative, and a number of non-party guarantors' future revenues generated from the sale of goods or services, in exchange for a discounted purchase price.

1.8 Upon information and belief, prior to executing the merchant cash advance agreements, Riverside Capital failed to conduct adequate due diligence, ignored numerous red flags, and knowingly or recklessly entered into agreements with Plaintiffs that enabled or perpetuated the fraudulent scheme, thereby

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 3

breaching its duties as a sophisticated financial institution and causing harm to lenders and investors.

1.9 Between January and October 2023, Riverside Capital swept approximately $3,517,709 from bank accounts held by Refreshing, Creative, and Water Station. Upon information and belief, there were also other voidable transfers via sweeps of bank accounts held by Refreshing and Creative due to Riverside Capital's access to those accounts that occurred during that period.

1.10 In February 2024, Riverside Capital initiated proceedings against Water Station and non-party Ryan Wear ("Wear") in the Superior Court in Connecticut, seeking to recover from Water Station money that had been advanced not to Water Station, but to Creative, Refreshing, and purportedly other non-parties. Several days later, on February 6, 2024, despite the fact that Water Station was unable to pay its obligations when they became due, Wear executed a settlement agreement and release on behalf of Water Station, where Water Station nevertheless agreed to pay Riverside Capital a lump sum to resolve any and all claims raised between Creative, Refreshing, and the non-parties in the Connecticut action. Water Station had not executed a corporate agreement with Creative, Refreshing, or any non-parties to pay for their debts nor was there any reason why Water Station would have done so.

1.11 Following the settlement agreement, the Connecticut Superior Court issued an ex parte judgment against Plaintiff Water Station for the purported debt of Creative, Refreshing, and the non-parties from the merchant cash advance agreements. Subsequently, almost $7 million was swept from Water Station's bank account and transferred to Riverside Capital.

1.12 The transfer of almost $7 million should be set aside, and the money should be returned to Debtor/Plaintiff Water Station because the transfer was a

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 4

constructive fraudulent conveyance. Water Station was not a party to or guarantor of either merchant cash advance agreement, and, at the time of the transfer, Water Station was insolvent or became insolvent as a result of such transfer. Alternatively, Riverside Capital has been unjustly enriched by roughly $7 million at Water Station's expense.

1.13 Additionally, the transfer of approximately $3.5 million to Riverside Capital between January and October 2023, and any other transfers to Riverside Capital from bank accounts held by Plaintiffs, should also be set aside and the money should be returned to Plaintiffs/Debtors because such transfers were constructive fraudulent conveyances, and at the time of the transfers Plaintiffs were insolvent or became insolvent as a result of such transfers.

## II.    JURISDICTION, VENUE, PARTIES

2.1 This action arises under Rule 7001 of the Federal Rules of Bankruptcy Procedure and seeks to avoid, recover, and preserve estate property either transferred or currently held by Defendant pursuant to 11 U.S.C. § 542, 547, 548, 550, and 551.

2.2 This adversary matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H), and (K).

2.3 This Court has jurisdiction pursuant to 28 U.S.C. § 1334.

2.4 Venue is proper as set forth in 28 U.S.C. § 1409.

2.5 Plaintiffs are Washington limited liability companies which were placed into involuntary Chapter 11 bankruptcy proceedings on or about August 27, 2024, and then converted into voluntary Chapter 11 bankruptcy proceedings on October 23, 2024.

2.6 Upon information and belief, Riverside Capital is a limited liability company organized under the laws of the State of Connecticut. Upon information

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 5

and belief, Riverside Capital's sole member is MCA Receivables Group, LLC, which is a Delaware limited liability company whose sole member is a citizen of Florida.

### III.   FACTS

3.1   Water Station was owned in part by non-party Ryan Wear ("Wear") and in part by non-party Summit Management.  Summit Management was itself owned in part by Wear and in part by Richard Wear (Wear's father).  Wear also owned Creative in part with his father, along with several other affiliated entities and companies.  Refreshing was owned in part by Water Station and in part by Summit Management.  Many of these companies or entities were interrelated; some were independent; and a number were in the water machine and vending machine space.

3.2   Non-party Wear and Plaintiffs, together with their various affiliates, engaged in and operated a large-scale Ponzi scheme.

3.3   As part of that scheme, Creative was a company formed to manufacture and sell water vending machines; Water Station was a company formed to source, place, and service the water vending machines manufactured by Creative; and Refreshing and its subsidiaries owned and operated vending machines across the United States.  Refreshing was the central financial clearinghouse for Plaintiffs and their subsidiaries.

3.4   Prior to these bankruptcy and related proceedings, Plaintiffs secured investors and lenders by means of various agreements and arrangements, representing that the proceeds would be used to deploy water machines and create corresponding revenue streams.  Upon information and belief, however, Plaintiffs failed to manufacture or sell the quantity of water machines represented to

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 6

investors and lenders.  As such, Plaintiffs created an illusion of a legitimate profit-making business and failed to invest funds as promised to investors.

3.5    For example, by April 2022, Plaintiffs began engaging investors to purchase bonds issued by Water Station under a bond agreement.  A true copy of the bond agreement is attached to this Adversary Complaint as Exhibit 1 ("Bond Indenture") and the terms of which are incorporated by reference.  Generally speaking, proceeds from the bonds were to be used only to purchase water machines.  The purchased water machines were intended to collateralize the bonds, and sales from the water machines were to generate revenue to enable principal and interest payments to the bond holders.

3.6    Upon information and belief, Wear and Water Station representatives were providing fraudulent and inaccurate documentation intending to induce the release of bond proceeds under the Bond Indenture by showing that Water Station was purchasing as many as thousands of water machines at a time.

3.7    Upon information and belief, released bond proceeds were then used to pay earlier investors and creditors, despite the Bond Indenture's prohibitions against doing so.

3.8    Because the operating companies failed to generate sufficient legitimate business proceeds to cover their payment obligations to existing investors and creditors, they relied upon funds from new investors and creditors to pay earlier investors and creditors.  These entities and their affiliates further perpetuated the Ponzi scheme by commingling funds through voluminous intercompany transfers of moneys received from investors and lenders.

3.9    For example, on or around May 4, 2022, approximately $2 million was deposited into a Creative bank account from two investors.  The money was then transferred first to a Water Station bank account, and then was used to make

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 7

payments to earlier investors, including one of which who provided the original funds.

3.10  Similarly, on or around June 10, 2022, approximately $1.5 million was deposited into a Creative bank account from a different investor.  At least $350,000 of these funds were then transferred to a Water Station bank account and a different Creative bank account, and again, these new investor funds were subsequently used to pay old investors and operating expenses.

3.11  These types of transactions continued.  On August 2, 2022, approximately $585,000 was deposited into Creative's bank account.  The majority of these funds were first transferred to a Water Station bank account, and then used to pay old investors or transferred to other affiliated entities.

3.12  Between January and July 2023, Wear caused Creative, Refreshing, and some other affiliated companies and entities to enter into similar investment arrangements with Defendant Riverside Capital.  Water Station was not a party to the Riverside Capital agreements.  But as part of the agreements, Creative, Refreshing, and these other affiliated companies or entities sold a portion of their future revenue streams at a discount to Riverside Capital.  The purchases by Riverside Capital were not a loan, and there was no interest rate charged.  For example, Riverside Capital might purchase a certain percentage of future receipts—*i.e.,* payments made by cash, check, or electronic transfer resulting from the sale of goods from vending machines (or from a collection of vending machines).  That appears to be what happened here.

3.13  On January 20, 2023, Wear caused Refreshing and 38 other affiliated companies or entities to enter into a "Purchase and Sale of Future Receivables" with Riverside Capital ("January 20, 2023, Purchase and Sale Agreement").  According to that agreement, Riverside Capital was to pay $750,000 and receive

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 8

the right to payment of $1,087,500.00 in future receivables.  A true and correct copy of the January 20, 2023, Purchase and Sale Agreement is attached hereto as Exhibit 2 and incorporated by this reference as if set forth in full herein.  The 38 affiliated companies or entities caused to enter into the January 20, 2023, Purchase and Sale Agreement included the following:

a. 1118 Virgina Street LLC
b. 11519 South PetroPark, LLC
c. 1206 Hewitt Ave LLC
d. 2129 Andrea Lane, LLC
e. 3209 Van Buren LLC
f. 3422 W Clarendon Ave, LLC
g. Absolute Vending, LLC
h. Aqua Stations LLC
i. Arizona Water Vendors Incorporated
j. Aurora Building Products LLC
k. Big Bobs Flooring Co. of Washington LLC
l. Crystal Clear Water Service LLC
m. Emery Development LLC
n. Golden State Vending, LLC
o. Honor Refreshments, LLC
p. Ideal Property Investments, LLC
q. K-2 Acquisition, LLC
r. NV Distribution
s. Pinnacle Management Services, LLC
t. R W Services
u. Refreshing California L.L.C.
v. Refreshing Carolinas LLC
w. Refreshing Florida LLC
x. Refreshing Great Lakes, LLC
y. Refreshing Montana, LLC
z. Refreshing Texas, LLC
aa. Ryan Wear LLC
bb. Snack Pro Vend
cc. Summit Management Services LLC
dd. Summit Vending Inc

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 9

ee. TCR Plumbing LLC
ff. Vend Depot LLC
gg. Vending Management LLC
hh. Vista Ventures, LLC
ii. Water Purification Technologies LLC
jj. Waterstation Techventure LLC
kk. Zenith Properties, LLC

3.14 A Bank of America bank account was linked to the transaction, so that Riverside Capital could withdraw certain funds from the "Merchant" (in this particular case, Refreshing and the 38 other companies or entities, but, critically, not Water Station) that they received on account of the receivables sold. The January 20, 2023, Purchase and Sale Agreement authorized the transfer of $13,593.75 per day to Riverside Capital. Refreshing's bank account from which Defendant withdrew these funds was a Bank of America bank account ending in 7830.

3.15 Additionally, the 38 other companies or entities guaranteed the future receivables sale. (*See* Exhibit 2.) Again, though, Water Station was not one of those entities.

3.16 On July 6, 2023, Wear caused Creative and 21 other companies or entities to enter into a "Purchase and Sale of Future Receivables" with Riverside Capital ("July 6, 2023, Purchase and Sale Agreement"). According to that agreement, Riverside Capital was to pay $6,000,000 and receive the right to payment of $8,994,000 in future receivables. A true and correct copy of the July 6, 2023, Purchase and Sale Agreement is attached hereto as Exhibit 3 and incorporated by this reference as if set forth in full herein. The 21 other affiliated companies or entities caused to enter into the July 6, 2023, Purchase and Sale Agreement included the following:

a. 1118 Virgina Street LLC

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 10

b. 11519 South PetroPark, LLC
c. 1206 Hewitt Ave LLC
d. 2129 Andrea Lane, LLC
e. 3209 Van Buren LLC
f. 3422 W Clarendon Ave, LLC
g. Aqua Stations LLC
h. Arizona Water Vendors Incorporated
i. Aurora Building Products LLC
j. Big Bobs Flooring Co. of Washington LLC
k. Crystal Clear Water Service LLC
l. Emery Development LLC
m. Ideal Property Investments, LLC
n. K-2 Acquisition, LLC
o. Pinnacle Management Services, LLC
p. Pinnacle Property Holding Company, LLC
q. R W Services
r. TCR Plumbing LLC
s. Water Purification Technologies LLC
t. Waterstation Techventure LLC
u. Zenith Properties, LLC

3.17 Two Bank of America bank accounts were linked to the July 6, 2023, transaction, so that Riverside Capital could withdraw certain funds from the "Merchant" (for this particular case: Creative and 21 other companies or entities, but, again critically, not Water Station). The Bank of America bank accounts for the July 6, 2023, transaction ended in 6352 and 7830 (this latter bank account being the same as with the January 20, 2023, Purchase and Sale Agreement). The July 6, 2023, Purchase and Sale Agreement authorized the transfer of $200,000 per day to Riverside Capital.

3.18 Additionally, Creative, Refreshing, and the 21 other companies or entities guaranteed the future receivables sale of July 6, 2023. A different entity, "Waterstation Techventure LLC" is a guarantor. That entity is not Plaintiff Water Station, and indeed, Plaintiff Water Station is not a party to either the January 20,

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 11

2023, Purchase and Sale Agreement or the July 6, 2023, Purchase and Sale Agreement.

3.19    Riverside Capital, as a sophisticated financial institution engaged in large-scale lending, owed a duty to exercise reasonable due diligence and adhere to commercially reasonably standards.  Riverside Capital was obligated to investigate and assess the legitimacy of Plaintiffs' business and financing practices, and to refrain from facilitating transactions that bore clear indications of a Ponzi scheme.

3.20    Notwithstanding these obligations, Riverside Capital instead entered into agreements primarily served to protect its own interests (including by executing guarantees and legal mechanisms granting it daily access to Creative's and Refreshing's bank accounts), failed to conduct the requisite due diligence, and ignored numerous red flags.  Riverside Capital knowingly or recklessly executed the Purchase and Sale Agreements that enabled and perpetuated the fraudulent scheme, thereby breaching its duties and causing harm to Plaintiffs' creditors and investors.

3.21    On January 24, 2023, Riverside Capital deposited $637,500 into Refreshing's Bank of America bank account ending in 7830.  The very next day, Riverside Capital began swiping funds from that same bank account.  Between January 25, 2023, and May 18, 2023, Riverside Capital withdrew $13,594 almost every day, and even twice a day on some occasions.  On June 15, 2023, Riverside Capital began withdrawing $48,180 each day from Refreshing's Bank of America bank account and did so almost daily.  On July 7, 2023, Riverside Capital deposited $1,800,000 into Refreshing's Bank of America bank account.  But that same day Riverside Capital began withdrawing $100,000 from that same account and did so intermittently for several days until swiping a total of $600,000.

25-80017-FPC    Doc 30    Filed 09/12/25    Entered 09/12/25 10:04:14    Pg 12 of 19

3.22 On May 17, 2023, Riverside Capital deposited $2,805,000 into Creative's Bank of America bank account ending in 6352. Riverside Capital then withdrew $48,180 almost daily from that same account until June 8, 2023. Then, in September and October 2023, Riverside Capital made two withdrawals of $75,000 and a withdrawal of $15,000 from Creative's Bank of America bank account. Additionally, $200,000 was transferred from Water Station's Bank of America account ending in 5591 to Riverside Capital on August 1, 2023, despite the fact that Water Station was not a party to any agreement with Riverside Capital.

3.23 Riverside Capital knew or should have known that Plaintiffs were using comingled monies from investors and lenders between affiliated business entities.

3.24 In total, between January and October 2023, Riverside Capital swept approximately $3,517,709 from bank accounts held by Refreshing, Creative, and Water Station. Upon information and belief, there were other transfers via sweeps of bank accounts held by Refreshing and Creative due to Riverside Capital's access to those accounts that occurred during or around that period.

3.25 On or around February 2, 2024, Riverside Capital initiated legal proceedings against Water Station Management LLC and Wear in the Superior Court in Connecticut (the "Action"). Riverside Capital alleged that Water Station was the "seller" of the future receivables in the July 6, 2023, Purchase and Sale Agreement with Riverside Capital, and that Wear was a guarantor. Attached to Riverside Capital's Complaint as Exhibit A is the July 6, 2023, Purchase and Sale Agreement, showing Creative Technologies LLC as the seller/merchant, but not listing Water Station Management LLC as a party or as a guarantor.

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 13

3.26  Even with these deficiencies on the face of the Complaint and the accompanying material, Riverside Capital apparently obtained a prejudgment order in Connecticut, authorizing it to secure via prejudgment process the sum of $6,908,522.  Neither Water Station nor its bank account number ending in 5591 were included in any of the contracts with Riverside Capital.

3.27  On or around February 6, 2024, Wear caused Water Station to enter into a settlement agreement and release (the "Settlement Agreement") between Riverside Capital, Water Station, and Wear whereby Water Station agreed to pay $6,908,502 for the release of all claims between the parties to the July 6, 2023, Purchase and Sale Agreement and parties to the Action.  The Settlement Agreement purported to require that Water Station execute, and provide Riverside Capital with, any and all required documents to release the almost $7 million from its bank account at Bank of America to Riverside Capital's counsel for the settlement payment.  On or around that same day, Wear individually and on behalf of Water Station signed an authorized release (the "Release").  In a letter dated on or around February 5, 2024, counsel for Riverside Capital provided Bank of America's Legal Service Process Unit with the Release stating that the parties have "fully settled this litigation" and requested Bank of America accept the letter as notice to immediately release the funds.  A true and correct copy of the letter and Release are attached hereto as Exhibit 4.

3.28  Bank of America thereafter transferred $6,908,522 from Water Station's bank account to three other bank accounts that are under the control of Riverside Capital.

3.29  Upon information and belief, Water Station had not executed a corporate agreement with Creative, Refreshing, or any non-parties to pay for their debts nor was there any reason why Water Station would have done so.

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 14

3.30   At the time Wear caused (1)Refreshing to enter into the January 20, 2023, Purchase and Sale Agreement, (2) Creative to enter into the July 6, 2023, Purchase and Sale Agreement, and (3) Water Station to enter into the Settlement Agreement and authorized the Release, each was unable to pay its obligations when they became due.

## IV.   FIRST CLAIM FOR RELIEF

### (Fraudulent Transfer; 11 U.S.C. § 548(a)(1) – Water Station)

4.1   Plaintiffs reallege the above paragraphs as if set forth in full herein.

4.2   The transfer of almost $7 million of Water Station's money to Riverside Capital was made or incurred within 2 years before the date of the filing of the bankruptcy petition.

4.3   Upon information and belief, Wear caused Water Station to enter into the Settlement Agreement and authorized the Release with actual intent to hinder, delay, or defraud Water Station's creditors.

4.4   Water Station received no reasonably equivalent or any value for the transfer, nor was the transfer related to any antecedent obligation of its own.

4.5   Upon information and belief, Riverside Capital caused the transfer to be made because it believed that Water Station or Wear would incur or had incurred debts beyond their ability to pay as such debts matured.

4.6   Additionally, both before and after the transfer, Water Station was insolvent.

4.7   Water Station is entitled to avoid the transfer and a declaration that the transfer is void.

## V.   SECOND CLAIM FOR RELIEF

### (In the Alternative; Unjust Enrichment – Water Station)

5.1   Plaintiffs reallege the above paragraphs as if set forth in full herein.

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 15

5.2   A benefit was conferred upon Riverside Capital in the amount of $200,000 when Riverside Capital acquired or took that money from Water Station.

5.3   A benefit was also conferred upon Riverside Capital in the amount of $6,908,522 when Riverside Capital acquired that money from Water Station.

5.4   Upon information and belief, Riverside Capital was aware of the benefit it received as it took express actions on or about August 1, 2023, to cause $200,000 to be transferred from Water Station's bank account to Riverside Capital's bank accounts.

5.5   Additionally, Riverside Capital was also aware of the benefit it received, as it took express actions in or around February 2024 to cause $6,908,522 to be transferred from Water Station's bank account to Riverside Capital's bank accounts.

5.6   It would be unjust to allowed Riverside Capital to retain the money because Riverside Capital had no right to it in the first place.  Water Station was not a seller, merchant, or guarantor (or even a party) under any Purchase Sale Agreement with Riverside Capital and had no claims or interests to settle or release as part of the Agreement.

5.7   Water Station has been injured in an amount to be proven at trial, currently estimated to be at least $7,108,522 together with pre- and post-judgment interest on those amounts from and after the date that Riverside Capital took the funds.

## VI.   THIRD CLAIM FOR RELIEF

### (Fraudulent Transfer; 11 U.S.C. § 548(a)(1) – All Plaintiffs)

6.1   Plaintiffs reallege the above paragraphs as if set forth in full herein.

6.2   The individual and independent transfers totaling approximately $3,517,709 from Plaintiffs' bank accounts to Riverside Capital, and any other

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 16

transfers via sweeps of bank accounts held by Refreshing and Creative due to Riverside Capital's access to those accounts during or around that period, were made or incurred within 2 years before the date of the filing of the bankruptcy petition.

6.3     Plaintiffs are entitled to the rebuttable presumption of actual intent to hinder, delay, or defraud Plaintiffs' creditors because Plaintiffs and their various affiliates operated in a manner that meets the key Ponzi-scheme criteria: (1) Plaintiffs lacked a legitimate profit-making business; (2) Plaintiffs paid earlier investors with funds from later investors, rather than legitimate business proceeds; (3) Plaintiffs comingled money between related business entities; and (4) Plaintiffs failed to invest funds as promised to investors.

6.4     Plaintiffs received no reasonably equivalent for the transfers from their bank accounts to Riverside Capital, and, with respect to Water Station, no transfer was related to any antecedent obligation of its own.

6.5     Additionally, both before and after the transfers, Plaintiffs were insolvent.

6.6     Plaintiffs are entitled to avoid the transfers and a declaration that the transfers are void.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A.     Judgment in their favor and against Riverside Capital in the amount of $10,426,231, together with pre- and post-judgment interest thereon;

B.     An order avoiding and setting aside the transfer of funds from Plaintiffs (and each of them) to Riverside Capital;

C.     A declaration that the transfers of funds from Plaintiffs to Riverside Capital were fraudulent transfers; and

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC – PAGE 17

D. Such other and further relief as the Court deems just and proper.

DATED: September 12, 2025.

TONKON TORP LLP


By: _s/ Christopher J. Pallanch_____
Danny Newman, WSBA 61824
Ava Schoen, admitted Pro Hac Vice
Christopher J. Pallanch, WSBA 45859
*Attorneys for Debtor*

SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE
CAPITAL NY LLC – PAGE 18

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **SECOND AMENDED ADVERSARY COMPLAINT AGAINST RIVERSIDE CAPITAL NY LLC** was served on debtor and the parties indicated as "ECF" on the attached list of interested parties by electronic means through the court's case management/electronic case file system on the date set forth below.

In addition, the parties indicated as "non-ECF" on the attached list of interested parties were served by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each party's last-known address, and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

DATED: September 12, 2025.

TONKON TORP LLP

By: _s/Christopher Pallanch_____
Danny Newman, WSBA No. 61824
Ava Schoen, admitted *Pro Hac Vice*
Christopher Pallanch, WSBA 45859

*Attorneys for Debtors*

044904\00001\18544350v2

**PAGE 1 OF 1** – CERTIFICATE OF SERVICE